Good morning, Your Honors. Good morning. May it please the Court, Sassoon Nalbanyan on behalf of Petitioners and Madam Clerk, I'd like to reserve two minutes for rebuttal. If you'll just keep track of your time, I'll try to help you, but keep your on the clock. Will do, Your Honor. Thank you. Your Honors, in this case, it's a pretty lengthy set of facts. However, the key point in this case is whether or not any of the inconsistencies go to the asylum claims, and whether or not the judge should have issued two separate decisions with regard to the son's case and with regard to the husband and wife, Kima and Grigor's case. Your Honor, in this case, it was not the consolidation, per se, that we felt was a due process violation. It was the fact that during the son's case, the son never had a chance to, was never questioned about the inconsistencies from the parent's case and did not have a chance to, under Soto Olarte, the I.J. should have confronted him with some of those inconsistencies, and he never even had a chance to cross-examine his parents or listen to any of the witnesses. So essentially, it was... He's responsible for his own case, is he not? I mean, he has the burden of proof to show that he meets the requirements. He had lots of credibility problems on his own, didn't he? Well, Your Honor, if you take his case by itself, that is correct. He is responsible for his own claim. But if you take his own case in and of itself, the credibility problems that he had under the REAL-ID Act, it may have been different, but the credibility problems were whether he lied on his visa application, which clearly is not something consistently the Ninth Circuit has held. It's not an inconsistency that's germane to the claim, whether he worked for the shoe company for two weeks or two months. And I believe, with regard to his case, that was probably the biggest inconsistency. Well, actually, the use of the parents' names, the pseudonyms. And that, we would say, is, of course, perhaps more egregious, but again, it's not germane to the asylum claim. What about the fraudulent police report? What about the lying about his parents on the asylum application? Don't those count? Well, with regard to the police report, he did submit rebuttal evidence to show that that individual did exist, and that the police report was not... You mean the overseas investigation, correct, Your Honor? Basically, first of all, the overseas investigation, he did not have a chance, given the nature of overseas investigations, to cross-examine the preparer to ask what the methodology was. And the judge said he would give it heavy weight. And in reality, he did not give it too much weight, but the individual did not have a chance to cross-examine, and at least to ask questions about how the report was done and so forth. He did admit it was false, though, right? That's correct. But under Yeaman Berhe, I would have to go back and look, and I will check, Your Honor, but I'm not sure if he was, per se, handed the police report, or he obtained it through another means. Let me ask you a couple of questions, which I think frame my review. It doesn't seem to me that the BIA adopted the IJ's opinion. Would you say the BIA adopted the IJ's opinion? It seemed to me that they went off on their own, if you will. They examined some inconsistencies, but the others, they did not adopt, nor did they address. That is correct, Your Honor, and they did not talk about it. So at that point, it seems to me that what we have to do is we can only review what they did as to the inconsistencies they examined. We might be able to go to the IJ's decision to see if maybe their, if you will, extrapolation or basis is somewhat clarified, but I can't go into things that the BIA did not address itself, because the BIA did not adopt the opinion. Would you agree? I would agree, Your Honor, and the BIA did not cite to a matter of Bourbano either, so I would agree. That is correct, Your Honor. So at that point, I'm stuck with inconsistencies that only the BIA particularly talked about. Would you agree? I would, Your Honor. That's correct. And the inconsistencies that the BIA talked about, especially in its second decision, are with regard to whether the police ever searched the home and with regard to, again, stating that the children were not, were in Poland versus in Armenia, which either way they're in a third country, and the parents' names with regard to the son's case, he did not misstate the parents' names to embellish it. They apologized on the record, and he did state that they were misled by, unfortunately, the unscrupulous notarios that are out there, and basically, had he said his parents were still in the home country and being beaten and persecuted, that I would agree was very important, would be important if the parents were in the U.S. and they were, in fact, in his claim, it said they were being harmed, because that would be embellishing his testimony. That would be germane to the case. Well, the reason I ask you about that, it seems to me that the inconsistency about his job was never addressed by the BIA. Oh, I see. That is correct, Your Honor. So we don't have to go to the job. In his application, he stated he lied, and he said he was a shoemaker, and then he explained this because he needed proof, and his friend provided him the proof of employment. Given Singh, I'm not sure that's really an application, that it's really a problem to lie on your application to flee the country, and then after that, he didn't continue to when he got to the U.S. Is that correct? That is correct. That is correct, Your Honor, and that's correct. So therefore, unless we can get to the IJ's decision that he was not persecuted in 99 when he lied to flee, we're kind of stuck with what the BIA said, aren't we? Well, Your Honor, while that's correct, yes, but with the BIA, with regard to the BIA's inconsistencies, that is correct, yes, I would agree with the court on that one because the BIA itself, the inconsistencies that the BIA cited are not major inconsistencies that go to the heart of the claim, and of course, the past and future persecution was not addressed independent of the adverse credibility finding, neither was the cat claim, in fact. So at this point, Your Honor, unless the court has more questions, I would like to reserve the remainder of my time. Very well. Thank you. We'll hear from the government. Good morning, Your Honors. May it please the court. My name is Carrie Monaco, and I represent the respondent, Attorney General Loretta Lynch, in this matter. In this immigration case, the petitioners admittedly provided false statements in presenting their claims for asylum, withholding of removal, and cat protection, and in addition, all three petitioners were internally inconsistent with their own written applications and suffered from additional credibility problems, including omissions in their written applications, submission of a fraudulent document, and lack of corroboration, and as the agency- The real question here is, did it go to the heart of the applications? Yes. I think what Judge Myland Smith said about, I mean, Judge Randy Smith said about, we're kind of stuck with what the BIA rested on is a real problem in your case. The board noted a number of inconsistencies and discussed that they went to the heart of the claim. Maybe you could go to the exact inconsistency you want us to focus on, because if we're going to go to Gregole, that's Idaho for what that is, I don't know what their actual pronunciation is, or we're going to go to Kima, or we're going to go to Harman, tell us what you're going to focus on, the BIA's inconsistencies, because you'd agree with me, counsel, wouldn't you, that it isn't enough just to have an inconsistency? Under the Pre-Real ID Act, you're correct. And if you have an inconsistency, then the IJ has a responsibility to say, here's the inconsistency, what are you going to do about it? And then, after they say what the basis for what they believe the inconsistency, then the IJ's got to say, I don't believe it because of this. I mean, when I started this process some time ago now, it seems like yesterday, but nonetheless, going through that outline of what had to be said and when they were said was pretty important because a lot of times I'd say, well, that's an inconsistency, but then I'd look at the precedent and we have to confront them. And after we confront them, we have to ask them what the basis, we have to determine if they had no basis. So my worry is that, I mean, each one of these inconsistencies, I look for the confrontation and I'm not sure they had it. I'm looking for, well, there was an explanation. Did they really focus on what the explanation was and say that it had no basis? So give me a potential inconsistency where they did all of those. Sure. I'm happy to walk through the different findings of the board and how they went to the inconsistencies they found and how they went to the heart of the claim and how those were outlined. So in the, let's first take the parents first, the husband and wife, I don't think there's any dispute that those are the same claim because the husband didn't have an independent claim. In derivative, right? Right. So the first inconsistency at issue that the board noted was whether the mother owned the store and home. Those are critical to her claim because as part of her persecution claim, she claimed that her home was seized. The home that she owned was seized and that the government refused to help her get her home back. Couldn't this have been just a miscommunication? We have certain understandings about property ownership in the U.S. that probably don't apply in a former communist country or Soviet. She was asked numerous times about whether she owned the home and her response was, how could I possibly own property as a minority? But she had a right to live there, right? Right. But then later she testified that she had the title and she did in fact own it. Well, but the BIA's explanation is a little weird to me. What does it mean here, the explanation fell flat? Well the standard that the court is looking for... I mean fell flat says nothing to me. I think what they're saying here is that the explanation was not compelling. Well, my worry is that I don't know what it means. I got a good lawyer here for the government who wants to say now what it means, but when I read fell flat, I say to myself, what does that mean? Why don't you explain what you mean so I can evaluate it? That's what I said to myself when I saw fell flat. Yeah, and what the board is looking at is a slightly different review than what the court's looking at. But what the board's looking at is whether the immigration judge's findings were clearly erroneous. And so when they're looking at the explanation and whether it was sufficient to overcome the inconsistent statements, the board is looking at whether that explanation was sufficient to change the results in the case. And what the court's looking at here under the standard of review is whether the explanations that the petitioners provided is so compelling that the court has no choice but to reverse it. Well, it doesn't seem to me it has nothing to do with compelling to me. Seems to me I have to have the BIA telling me what they meant so I can evaluate it. It's hard to evaluate a record I don't know what they're saying. Well and under this court's case law when we're looking at the combination... of an explanation of why you don't believe what the petitioner said. That's obvious. Do you want me to cite you the cases? I don't think you need them. And fell flat doesn't meet there. And then they go on and she testifies that refugees who were Georgians took over their home and when they returned they got into a confrontation. They went to the police who stated they had to show documents and then she said, well you got my documents. You came and got them while I was gone. And the government asked her if her husband owned any real estate and then I go through that and after I get through that whole explanation I still don't have any explanation by the BIA of what in the devil was that wrong? Because my colleague is correct. Our idea of property is quite different than what happens in a communist country. Perhaps what is cited in our brief in this case when you're looking at an adverse credibility finding that's made by the immigration judge that's then used by the board. What the board is permitted to do and what the court should do is they are permitted to go back and look at the immigration judge's explanation for that inconsistency. If what? If what? What is our standard? I go back and look at that if what? To the extent it clarifies what the BIA is suggesting. To the extent that the board is relying on the immigration judge's findings. It doesn't say that any place. The BIA did not rely. The BIA decided what they wanted to do in this case on their own and then picked out what they wanted to say was the basis for their decision. So I can understand going back and looking at what the IJ, if it's going to help me clarify what they did, but otherwise I'm having a tough time. But I disagree that the board went off on its own. What it did was use some of the many findings that the immigration judge made in his decision and discussed those as the basis for supporting the adverse credibility finding. The board did not make any independent credibility findings that the IJ did not. The board was merely relying. Let's go back to what she said. After all this was through, her last answer was, this is not called a property that was built by the government during the communist era and distributed to the inhabitants. That, the name there, was not property. In other words, what you are saying is my inconsistency is based on your idea of what property is. And I want to know, tell you, that under a communist regime, that's not the way it is. And I saw nothing in here to say that that was somehow out to lunch except it fell flat. Well, I don't disagree that perhaps the definitions are different. What we're relying on is her different answers and her own inconsistent answers. Can I go to a slightly different tack? I think you've heard from my colleague on his perspective on this thing. Under our case law, is the BIA allowed to make a decision as long as one or maybe two of the factors that were relied upon by the IJ meet the necessary standard? In other words, if the BIA finds that, say, two of the many bases for inconsistencies that were found by the IJ were enough, and they cite two of them, is that sufficient to meet the standard here? Yes. Under the Pre-Real ID Act, all that needs to be shown is that the petitioners were inconsistent on material matters. There's no minimum number of material inconsistencies that need to be found. Sorry, I didn't mean to interrupt. Does the BIA have to spell it all out, or can they just say, refer back basically to what the IJ found in general, in effect incorporating it by reference? Yes. That's our position, and that's the references that I have in the brief. It's actually fairly common in the early days for the BIA to do that, wasn't it? It's still common today for the board to take a very thorough immigration judge decision and merely highlight some of the inconsistencies that the immigration judge relied upon. But if the BIA does not rely on all the inconsistencies, but makes its own determination based on consistencies that it determines are most important, we have to apply the law we have to the inconsistencies they determined important, don't we? We have to say, was there an inconsistency? Did you confront them? Did you let them explain? And what did you say about the explanation? We have to do that in nonetheless. We don't do that with all the inconsistencies the IJ found, because the BIA didn't rely on them. I agree, but you can use the analysis that the immigration judge used on those particular inconsistencies to help flesh out the history of the case and the explanations and the compelling nature or lack thereof of those explanations themselves. Your Honor, I see my time is up, so let's let the panelists. Other questions by my colleagues? No, thank you very much.  Do you have some time for rebuttal, counsel? Your Honor, with regard to the question posed to the government regarding whether the BIA can go pick out one, quote unquote, material inconsistency, it still needs to go under a period like the act, not only be material, but go to the heart of the claim. I guess my point was if the IJ concluded that a particular inconsistency went to the heart of the claim and the BIA found the same and just relied upon what the IJ had found, is that sufficient? In other words, put it another way, in another context, if a district judge does something and makes four or five different determinations, and maybe one of them is not appropriate, but we can rely on any of the findings or any of the decisions of the district court to uphold that. Isn't that correct? Well, I believe under the immigration context, Your Honor, if the BIA, unless they're adopting the judge's decision and saying such as so-and-so, the inconsistencies, they did not cite that language in here. So there's magic word requirements here. I believe so. I mean, that's just my opinion. That's what in the matter of verbatim says, right? That's right. You're asking for a remand, is that right? That's correct, Your Honor. And we're asking the court in the first instance to find that the credibilities didn't go to the heart of the claim and to remand under matter of ventura to address the future persecution and past persecution issue, but at the very least to remand under soto alarte to give the petitioners a chance to explain the inconsistencies that they were not confronted with and also that the IJ did not explain sufficiently why they were not a valid explanation. That's what we are asking for. I have one question about you say that the petitioners did not get due process. Did the IJ consider all of their claims separately? No, Your Honor. Well, I want you to see why they didn't. I mean, it seems to me that the IJ made a determination as to each claim, and if they made a determination as to each claim, I guess then we go to the sufficient evidence to support the determination. So I'm having a tough time understanding why the due process was not given. Well, basically, Your Honor, the son's claim, albeit it's a similar claim, but it's not identical. But they did address it, did they not? They did say what the answer was, did they not? And then I have to determine whether there's substantial evidence to support what they did. That's correct. And therefore, there's no due process as long as they have the substantial evidence. However, what's happening there is you're taking the inconsistencies from a different asylum application where there was no signed waiver or anything to use that asylum, the facts of that case on the other case, and you're using those facts to combine it with the other case. And it just becomes a mess because there is no signed waiver from the parents saying we allow our asylum case to be disclosed on the other asylum application. I mean, technically, they should have been addressed independently, in our opinion. All right. Any other questions for my colleagues? Thank you, counsel. Thank you, counsel. Thank you, Your Honor. The matter just argued is submitted.
judges: Lefkow, Smith, Smith